# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT M. JAFFE, individually and as Trustee of the Robert M. Jaffe Trust, Dated 10/8/90,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL DEMICH, et al.,<br><br>Defendants. | Case No.: 16-CV-0245 W (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [DOC. 44]** |

Pending before the Court is Defendants Michael Demich and Michael A. Demich Construction, Inc.'s motion for summary judgment or, in the alternative, partial summary judgment. Plaintiff Robert M. Jaffee opposes.

The Court decides the motion on the papers submitted, and without oral argument. See Civ.L.R. 7.1.d.1. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion [Doc. 44].

1

## I. BACKGROUND

In the summer of 2009, Plaintiff Robert M. Jaffe purchased a home in the Lake Hodges area of San Diego County (the "Property"). (*Demich Decl.* [Doc. 44-3] ¶ 2.) The Property occupies a large lot on a steep hillside overlooking Lake Hodges, and is accessed by a private easement road, known as Vista de Oro. (*Id.*)

After purchasing the Property, Jaffe hired Defendants Michael Demich and Michael A. Demich Construction, Inc. (collectively "Demich") to perform construction and improvements on the home and Property. (*Demich Decl.* ¶ 2.) At the time, Demich was rebuilding another home for Jaffe in Rancho Santa Fe that had been burned in the Witch Creek Fire, and was remodeling a third home for Jaffe in Rancho Santa Fe. (*Id.*) Consistent with their past practices, there was no written contract between Jaffe and Demich for the work to be performed on the Property. (*Id.*)

During the construction, disputes arose between Jaffe and his neighbors, William J. Corbett and Mary E. Brownyer ("Corbett / Brownyer"), Dennis P. Wymbs, and Robert Bradshaw, which eventually led to litigation. Before trial, Jaffe settled with Corbett / Brownyer and Wymbs, with Jaffe's insurer agreeing to pay the neighbors $62,500 and $15,000, respectively. (*Defs' Ex. 9B* [Doc. 44-6] p. 119; *Defs' Ex. 9c* [Doc. 44-6] p. 134.[1])

On July 27, 2015, an eight-day bench trial began in the San Diego Superior Court on the equitable issues between Jaffe and Bradshaw. (*Defs' Ex. 5* [Doc. 44-5] p. 38.) On September 14, 2015, Judge Robert P. Dahlquist issued a Statement of Decision in favor of Bradshaw's request for equitable relief on his causes of action for intentional trespass, negligent trespass, negligence, private nuisance, quiet title and declaratory relief. (*Id.* pp. 58–65.) In the decision, Judge Dahlquist also found Jaffe and Demich (who testified on behalf of Jaffe) were generally not credible witnesses (*id.* p. 46), and

---

[1] Defendant's exhibits ("Defs' Ex.") are attached to Defendants' appendix of exhibits filed in support of the motion [Doc. 44-4].

Bradshaw's expert witnesses were "significantly more credible than Jaffe's expert witnesses" (*id.* p. 48).

Before trial on the claims for money damages began, Jaffe settled with Bradshaw with respect to the claims for money damages, with Jaffe's insurer agreeing to pay Bradshaw $500,000. (*Defs' Ex. 9a* [Doc. 44-6] p. 112.) Jaffe then appealed Judge Dahlquist's decision on the equitable issues, which was affirmed on December 19, 2017. (*Notice of Status of Appeal* [Doc. 59] p. 2.) On January 29, 2018, the California Supreme Court denied Jaffe's petition for review. (*Id.*)

While Jaffe's appeal was pending, Jaffe filed this lawsuit for implied contractual indemnity against Demich. (*See Compl.* [Doc. 1]; *FAC* [Doc. 4].) Jaffe not only seeks to recover attorneys' fees he paid in the underlying lawsuit, but also the settlement payments made by his insurer to Jaffe's neighbors.

Demich now seeks summary judgment or, in the alternative, summary adjudication. Jaffe opposes.[2]

## II. APPLICABLE LAW

### A. Summary judgment standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322

---

[2] Demich originally filed his motion on August 11, 2017. Thereafter, the parties filed a joint motion to stay this matter pending Jaffe's state-court appeal, which this Court granted on November 13, 2017. (*See Stay Order* [Doc. 57].) On March 14, 2018, this Court terminated the motion without prejudice in light of the stay. (*See Term. Order* [Doc. 58].) The next day, the parties notified the Court that the California Supreme Court denied Jaffe's petition for review. (*See Notice of Status of Appeal*.) On March 20, 2018, the parties requested the Court reset Demich's motion, but also stated that the parties had "agreed and are working on scheduling mediation." (*Jt. Mt.* [Doc. 44] 4:20–21.) On April 10, 2018, the Court reset Demich's motion, but warned the parties to file a joint motion continuing resolution of the motion if the parties intended to attempt to resolve the case through mediation. (*Order* [Doc. 61] 2:1–9.) To date the parties have not filed a request to continue.

(1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. <u>Id.</u> at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot avoid summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." <u>In re Citric Acid Litig.</u>, 191 F.3d 1090, 1094 (9th Cir. 1999) (citing <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing <u>Anderson</u>, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Ford Motor Credit Co. v. Daugherty</u>, 279 Fed. Appx. 500, 501 (9th Cir. 2008) (citing <u>Celotex</u>, 477 U.S. at 324). Additionally, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.

4

## III. DISCUSSION

### A. The implied indemnity claim

Jaffe's FAC asserts a single cause of action against Demich for implied contractual indemnity. (*FAC*. p. 1.) Specifically, Jaffe seeks to recover "the sum of at least $580,000 paid to the neighbors," "a sum in excess of $100,000 for legal costs necessarily and reasonably incurred in defending the underlying action against Plaintiff," and "the loss of value to [Jaffe's] property resulting from the Judgment and injunctive restraints on the property's productive use and enjoyment." (*Id.* ¶¶ 18–20.) Because Jaffe's damages stem from the underlying litigation between him and his neighbors, to prevail on his claim Jaffe must establish that he and Demich were both responsible for injuring his neighbors. See Prince v. Pac. Gas & Elec. Co., 45 Cal. 4th 1151, 1159 (2009).

Demich appears to argue that in order to establish he was also responsible for injuring Jaffe's neighbors, Jaffe must show that Demich and Jaffee had "a joint legal obligation to" the neighbors. (*Defs' P&A* [Doc. 44-1] 5:20–22.) According to Demich, because he was hired to perform work for Jaffe only, Demich had no legal obligation to the neighbors and thus cannot be held liable for any of their damages. (*Id.* 6:17–22, 8:4–6.) Jaffe responds that Demich's argument incorrectly attempts to limit indemnity to circumstances involving contractual privity or negligence, but that indemnity may exist where the indemnitor (i.e., Demich) commits a wrongful act that causes damage to a third party. (*Pl's Opp'n* [Doc. 48]7:23–8:27.) Jaffe further argues that the evidence supports a finding that Demich's wrongful conduct contributed to Jaffe's neighbor's damages. (*Id.* 9:4–10:20.) The Court agrees with Jaffe.

As an initial matter, Demich's reply does not address Jaffe's contention that indemnity is not limited to cases of contractual privity or negligence, and that indemnity also exists where the indemnitor has committed a "wrongful act" that caused damage to a third party. Additionally, Jaffe has provided evidence indicating that Demich's wrongful conduct may have caused or contributed to the neighbors' damages. Specifically, in the underlying case, Judge Dahlquist found that "Demich trespassed onto Bradshaw's

property and plugged the rainwater conveyance pipe with rocks and concrete" which caused damage to Bradshaw's property. (*Defs' Ex. 5* p. 59.) The court also found that this conduct constituted a private nuisance, as well as when Demich "constructed modifications to the private easement road such that Bradshaw could no longer access his avocado grove using the pre-existing grove access road." (*Id.* pp. 58–61.) In short, Jaffe has established the existence of a disputed issue of material fact regarding whether Demich was at least partially responsible for Bradshaw's damages. Accordingly, Demich is not entitled to summary judgment on Jaffe's indemnity cause of action.

### B. Statute of limitations – attorney's fees

Jaffe seeks reimbursement for his own attorney's fees incurred in the underlying litigation. Both parties appear to agree that this claim is subject to the two-year statute of limitations found in California Code of Civil Procedure § 339. (*P&A* 8:9–11; *Opp'n* 9:15–10:10.) The parties dispute, however, when Jaffe's claim accrued.

Under California law, the "implied promise of indemnity and reimbursement applies only to the actual loss and not the liability incurred." Sunset-Sternau Food Co. v. Bonzi, 60 Cal. 2d 834, 843 (1964) (citation omitted). Thus, generally the indemnity cause of action "accrues at the time that the tort defendant pays a judgment or settlement as to which he is entitled to indemnity." Postley v. Harvey, 153 Cal. App. 3d 280, 285 (1984); U.S. Cold Storage v. Matson Navigation Co., 162 Cal. App. 3d 1228, 1234 (1984) (holding limitations period in indemnity claim runs "from the date of payment in the underlying suit").

Notwithstanding the general rule, Demich argues that in this case, Jaffe's claim for attorney's fees accrued by December 19, 2013, when Jaffe's attorney's sent a tender letter to Demich. (*P&A* 8:14–20.) According to Demich, "California law is clear that it is the <u>payment</u> of what a party is seeking indemnity for that starts the commencement of the statute of limitations." (*Reply* [Doc. 49] 6:15–16.) Relying on the December 19, 2013 tender letter, Demich appears to assume that Jaffe paid attorney fees by the time the

6

letter was sent, and thus the claim expired by December 19, 2015, well before this lawsuit was filed. (*Id.* 6:26–7:3.) The Court is not persuaded by Demich's argument for at least three reasons.

First, Demich fails to cite any authority supporting his position. Specifically, Demich cites no case which is factually analogous or in which a court has held the statute of limitations on an indemnity cause of action began to run when the indemnitee paid attorneys' fees in the underlying action.

Second, even if Demich was correct that the indemnity cause of action accrued with the payment of attorneys' fees, Demich has provided no evidence regarding when Jaffe *paid* attorneys' fees. The tender letter does not indicate that Jaffe had paid attorneys' fees. Thus, Demich has failed to support his argument with evidence.

Third, Demich's contention that the indemnification cause of action accrues with the payment of attorneys' fees in the underlying action is contrary to California case law. Demich's argument appears to depend entirely on the statement by the California Court of Appeal in Postley v. Harvey, 153 Cal. App. 3d 280, 286 (1984), that "the general rule [is] that the statute of limitations does not accrue until the defendant ... suffered *loss* through payment." (*Reply* 6:15–16, emphasis added.) Relying on the use of the term "loss," Demich contends that once Jaffe paid defense expenses in the underlying case, he suffered a loss and thus the indemnity cause of action accrued.

The problem with Demich's theory is that the California Supreme Court has specifically instructed that "'a cause of action for implied indemnity does not accrue or come into existence *until the indemnitee ... has suffered actual loss through payment*'." People ex rel. Department of Transportation v. Superior Court, 26 Cal. 3d 744, 751 (1980) (citation omitted) (emphasis in original). Quoting the Court of Appeal in Vegetable Oil Products Co. v. Superior Court, 213 Cal.App.2d 252, 257 (1963), the Court explained the reason for the rule:

> If it were the law that the statute of limitations starts to run when the bodily injury occurs, the indemnitee's remedy would be most unsatisfactory. Until

7

> the amount of damages was determined by a judgment or a compromise with
> the injured party, the indemnitor would have no way of either measuring or
> discharging his duty to his indemnitee. The only workable approach is …
> that the period of limitations starts to run from payment.

Id. Thus, the type of "payments" that signal the accrual of the statute of limitations are those made at the end of the underlying or principal action, which then allow for a determination of the amount of damage so the indemnitor can measure or discharge his or her duty. Jaffe's alleged payment of attorney's fees made long before the underlying litigation ended could not serve that purpose.

Moreover, although Demich's argument rests on a quote from Postley, other language from the decision clarifies that the indemnity cause of action accrues with payments made at the end of the litigation:

> It is a generally recognized rule "that a claim for indemnity based on tort
> does not accrue, and the statute of limitations does not start to run thereon, at
> the time of the commission of the tort, or the time the injury was inflicted,
> … The claim accrues at the time the indemnity claimant *suffers loss or
> damage, that is, at the time of payment of the underlying claim, payment of a
> judgment thereon, or payment of a settlement thereof by the party seeking
> indemnity.*"

Id., 153 Cal.App.3d at 284–285 (emphasis in original).

For these reasons the Court finds Jaffe's damage claim for attorney's fees is not time barred.

### C.   Code of Civil Procedure § 1021.6 & "Tort of Another" doctrine

Demich contends that Jaffe is not entitled to recover his attorneys' fees under California Code of Civil Procedure § 1021.6 or the "Tort of Another" doctrine.[3] Section 1021.6 provides:

---

[3] Demich contends that the "tort of another" doctrine was subsumed by section 1021.6. (*P&A* 10:8–12.) Although Jaffe points out several differences between the two, he does not dispute that both require him to be without fault for his neighbors' damages. (*Opp'n* 14:22–27.)

8

> Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) ***that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity*** or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict.

Id. (emphasis added). Based on this language, a three-pronged test governs whether the court may exercise its discretion under the statute. Uniroyal Chemical Co. v. American Vanguard Corp., 203 Cal.App.3d 285, 293 (1988). At issue in this motion is the third prong, subdivision (c). Subdivision (c) requires Jaffe to establish that he was "without fault" in the underlying litigation in order to be entitled to recover his attorneys' fees.

In his motion, Demich contends the Judge Dahlquist's Statement of Decision in the underlying litigation precludes Jaffe from establishing that he was without fault. Jaffe responds that Demich's reliance on the decision is misplaced because the determination of fault must be made by the trier of fact in this case, not in the underlying case.

In Bear Creek Planning Com. v. Title Ins. & Trust Co., 164 Cal.App.3d 1227 (1985), the California Court of Appeal explained that subsection (c)'s requirement refers to the trier of fact in the indemnity case, not the principal case. Id. at 1245. Bear Creek arose from an underlying (or principal) lawsuit initiated by an HOA against a homeowner to enforce covenants, conditions and restrictions ("CC&Rs"). However, the title insurance company hired by the HOA to record the CC&R's in the homeowner's deed of trust failed to do so, and the HOA was found liable on the homeowner's counterclaim for damages. The HOA then filed an indemnity action against the title insurance company for failing to record the CC&Rs.

9

In the indemnity action, the court awarded the HOA damages and attorneys' fees incurred in both defending and prosecuting the principal action. The title insurer appealed, arguing the trial court erred because the damages assessed against the HOA in the principal action presumably precluded the HOA from establishing it was without fault under section 1021.6. The court of appeal rejected the argument and explained:

> Defendant [i.e., the title insurer] fails to distinguish between the trier of fact in the *principal* action and the trier of fact in the *indemnity* action. Subdivision (c) refers to the trier of fact in the indemnity action. The issue in the principal action is whether the indemnitee is liable for the damages suffered by the injured party. It is the *indemnity* action in which the trier of fact must determine whether the indemnitee's conduct was of a nature to preclude recovery of implied indemnity. That the indemnitee was found liable for damages in the principal action forms no basis for denying attorney fees in the indemnity action. That the indemnitee was found liable for damages in the principal action is the basis for the indemnity action and the award of attorney fees therein.

Id. at 1245.[4] Thus, Bear Creek establishes that the determination of whether Jaffe is without fault for purposes of section 1021.6 must be made by the trier of fact in this case. See also Uniroyal Chemical Co., 203 Cal.App.3d 293 (rejecting defendant's argument that jury's finding of liability against the plaintiff in the principal action precluded a finding in the indemnity action that the plaintiff was without fault).

Nevertheless, Demich contends that Judge Dahlquist's Statement of Decision necessarily precludes Jaffe from establishing he was without fault for his neighbors' damages because "a simple referral to the decision in the underlying case reveals that Mr. Jaffe was repeatedly found to be at fault for creating the situation that led to the filing of the cross actions that are the basis for the indemnity lawsuit." (*Reply* [Doc. 49] 7:15–8:3.) To be sure, the Statement of Decision strongly suggests that Jaffe may have a difficult time proving he is without fault for Bradshaw's damages. However, the decision

---

[4] The Court of Appeal reversed the trial court's award of the HOA's attorney's fees incurred in prosecuting the indemnity action. Id. 1245–1246.

10

is unclear regarding the extent to which Jaffe's liability was based on his own conduct, as opposed to the conduct of his agents. For example, the Statement of Decision found "Jaffe acted unreasonably and improperly when he *or his agents* parked vehicles on the private easement road, blocking Bradshaw's access to Bradshaw's avocado grove." (*Defs' Ex.* 5 p. 61, emphasis added.) In short, the language appears to leave open the possibility that Jaffe will be able to establish that his liability stemmed entirely from Demich's conduct, and thus while liable for Bradshaw's damages, Jaffe was not at "fault." Accordingly, Demich is not entitled to summary adjudication of Jaffe's claim for attorneys' fees.

### D. Recovery of payments made by the insurers

Jaffe seeks to recover the $580,000 in settlement payments to his neighbors. Demich argues Jaffe cannot recover those payments because there is no dispute they were made by Jaffe's insurance carrier.

In Bramalea California, Inc. v. Reliable Interiors, Inc., 119 Cal.App.4th 468 (2004), the plaintiff sued the defendant for breach of contract and indemnity, seeking to recover attorneys' fees from an underlying case that were paid by insurance. In affirming the trial court's denial of the fees, the court of appeal explained that awarding fees paid by the insurer would have been a prohibited double recovery unless allowed by the collateral source rule." Id. at 472. According to the court:

> The collateral source rule allows an injured person to recover from the wrongdoer for damages suffered even if he has been compensated by the injury 'from a source wholly independent of the wrongdoer,' such as insurance. [Citation omitted.] But the collateral source rule applies to tort damages, not to damages for breach of contract. [Citation omitted.] This is due to the fundamental differences between tort and contract damages. [Citation omitted.] "The collateral source rule is punitive; contractual damages are compensatory. The collateral source rule, if applied to an action based on breach of contract, would violate the contractual damage rule that no one shall profit more from the breach of an obligation than from its performance." [Citation omitted.]

11

Id. at 473.

Similar to Bramalea, Jaffe's complaint asserts a cause of action for implied contractual indemnity. Because the collateral-source rule does not apply to such cases, Jaffe cannot recover any payments made by his insurers.[5]

### E. Costs of repair and diminution of property value

Demich seeks summary adjudication on Jaffe's claim for the costs to make certain repairs and the diminution of his Property's value. Demich argues, in essence, the claims are speculative and Jaffe will have a difficult time substantiating his claims. In response, Jaffe contends his costs of repair and diminution in value will be substantiated by the expert reports in the underlying litigation and this case.

Whether Jaffe's experts can substantiate his damage claims is an issue for the trier of fact. Demich's argument fails to cite any authority supporting summary adjudication in this case. Indeed, Demich's argument appears to evolve, to the extent his reply suggests the claims should be dismissed "given plaintiff's recent filing of a construction defect case…." (*Reply* 10:17–19.) Again, Demich cites no authority supporting this theory.

Although Jaffe's damage claims for costs of repair and diminution of property do not appear to be appropriate in an indemnity action, Demich has not provided a valid legal theory for dismissing those claims. Accordingly, summary adjudication of those claims is denied.

//
//
//
//

---

[5] To the extent Jaffe is seeking attorneys' fees that were paid by insurance, recovery of those fees would also be precluded under the collateral-source rule.

12

## IV. CONCLUSION & ORDER

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion [Doc. 44].[6]

**IT IS SO ORDERED.**

Dated: September 6, 2018

Hon. Thomas J. Whelan
United States District Judge

---

[6] Demich has filed evidentiary objections to Jaffe's opposition. (*See Evid. Objections* [Doc. 49-1].) The Court need not rule on most of the objections because this order does not rely on the evidence to which Demich objects. With respect to Demich's objections to the O'Donnell Report and Asakawa Report (objections 11-12), Demich has done an inadequate job explaining the basis for the objections, and the reports appear relevant to Jaffe's claims for diminution of property and costs to make certain repairs.